10547

CLARK v. HOWARD, SHERIFF.

(105 S. E. 287.)

HUSBAND AND WIFE—HUSBAND'S LABOR ON WIFE'S LAND DOES NOT ENTI-
TLE HIM TO CROPS.—As respects rights of husband's creditors, where
the wife is the owner of the land and entitled to its use, the crops
grown thereon are presumptively hers, and this presumption is not
overcome by proof that her husband performed labor to raise the
crops, without any proof of a transfer to him of a right to the crops.

Before McIVER, J., Aiken, Spring term, 1919.    Reversed.

Action by Mrs. Theodocia Clark against H. H. Howard,
as Sheriff, to recover possession· of certain chattels seized
by defendant on attachment against plaintiff's husband.
On judgment for defendant, the plaintiff appeals.

*Mr. John F. Williams,* for appellant, cites: *Acts and
declarations of husband, without the presence of the wife,
not in possession of the specific property levied on, are inad-
missible to bind the wife:* 38 A. S. R. 44. *Inadmissible as
hearsay:* 1 Greenleaf Evid. (15th Ed.), sec. 99. *Crop on
wife's land is her property, even though husband gratuitously
devotes his labor and time to producing it:* 8 R. C. L. 370.
*Creditors have no rights in the increase, profits or income of
her estate, arising through the husband's gratuitous serv-
ices:* 13 R. C. L., secs. 186, 1160; *Id.,* secs. 188, 1162; 81
A. S. R. 603; 58 A. S. R. 425; 27 N. Y. 277; 55 Penn. St.
437; 93 Am. Dec. 769; 55 Minn. 60; 30 Am. Rep. 500; 23
Wis. 301; 99 Am. Dec. 173; 6 Rush. (Ky.) 171; 107 S. C.
512.

*Messrs. Sawyer & Gyles* and *R. E. Gunter,* for respond-
ent, cite: *Plaintiff alleges title in herself and the burden is
on her:* 30 S. C. 491; 22 R. C. L., sec. 102, p. 931; sec. 90, p.
922; sec. 103, p. 932; sec. 50, p. 900; secs. 53, 902; 61 L. R.
A. 513; 92 S. C. 43; Jones on Evidence (2d Ed.), secs.
176-181. *Mortgages were admissible as evidence of acts*

*of ownership and as throwing light on the question of ownership*: 30 S. C. 491; 85 S. C. 167; 10 R. C. L., sec. 2122, p. 694; 18 Enc. Pl. & Pr. 573, 549; Jones on Evidence, sec. 351; sec. 74; 27 S. C. 242; 113 S. C. 4; 4. Rich. Eq. 387. *If wife permits husband to cultivate her land for his benefit the crops are his property and subject to claims of his creditors*: 13 R. C. L., subsec. 188, p. 1162; 150 Mass. 275; 30 S. C. 497. *Testimony as to past dealings between Mr. and Mrs. Clark, as to the property in question, was properly admitted*: 30 S. C. 497. *A proven condition is presumed to continue until another condition is proven to exist*: 101 S. C. 45; 1 Greenleaf on Evidence, sec. 41. *New trial will not be granted for inadequacy of damages on application of party against whom they were rendered*: 104 S. C. 440. *Charge was clear and fair and without error, and no reversal can be had*: 93 S. C. 295; 97 S. E. 153.

December 20, 1920.

The opinion of the Court was delivered by Mr. CHIEF JUSTICE GARY.

The following statement appears in the record:

The respondent, as sheriff of Aiken county, levied upon the followig chattels, alleged to be of the value given herein below, to wit, a mule, $225; about 400. bushels of corn, $900; three bales of cotton, $408.80. The respondent levied upon the said chattels as the property of appellant's husband, M. Clark, the sheriff having an execution on a judgment against M. Clark in favor of the Southern States Phosphate & Fertilizer Company, for about $800, said judgment having been obtained in 1915 on note given by M. Clark in 1914. The appellant brought this action for claim and delivery to recover the possession of said chattels, there being no dispute in the evidence that the value was as given hereinabove by the plaintiff. The appellant alleges that the chattels in question were hers. At the Spring term

of Court of Common Pleas, 1919, the case was tried, and
the respondent was given a verdict by the jury for the return
to him of all of the property in dispute, or its value, which
the jury fixed at $400. The appellant made motion for a
new trial, upon the ground that the verdict was not respon-
sive to the testimony, and that it was a mere compromise,
and the value of the property found was unsupported by the
testimony; said motion being based on the legal grounds set
out in the exceptions. The motion was refused." ·

The vital question in the case is presented by the follow-
ing exception:

· "The Court erred, it is respectfully submitted, in charg-
ing the ·jury: 'I charge you, that if a wife owning land lives
with her husband, who cultivates her land, she has a right
to do one of two things: She has a right to make a contract
with him, requiring him to pay rent; she has a right to make
him account to her, or she has the right to allow the hus-
band to use her land for the purpose of making crops for
the support of the family, and, if she does that, the prop-
erty would be the property of the husband, and not the wife'
—the error being: (a) That his Honor limited the wife's
control of her property to one of two things stated; whereas,
she might neither rent nor make her husband account, but
make him perform his duty as nearly as he can to work and
support her in the year 1917, even though he does work on
her land and pay her bills with her money, just like thou-
sands of worthless or disabled husbands do, and by that act
the crops do not become his, so that his creditors of 1914,
who have been refused indorsement by the wife, might con-
fiscate her crop and subject them to his debts in 1917. (b)
That the labor of the husband rightfully belongs to the wife
and family, and not only has the family a right to the toil
of the husband, but it is his duty to support the family, and
if the wife allows him to work on her farm for the support
of herself and their family, the crops do not thereby become

the property of the husband and subject to his debts, even though she does not make a contract with him, and even though she does not rent to him."

In order to understand whether the charge was prejudicial as applied to the facts of this case, we reproduce the following from the testimony of the plaintiff:

"My husband tried to farm the land in 1913 and 1914, and he made a complete failure in 1914. He bought fertilizer that year from the Southern States Fertilizer & Phosphate Company, and the man who sold it to him came with him to ask me to indorse his paper for the fertilizer, and I refused to do it. My husband did get the fertilizer, and during 1914 used some of it, and sold a great part of it to others not on the place. He became paralyzed, and has not been able to do any work since. He can do some errand going, but he has done no work of a manual character since, and I have been running my place ever since 1915, inclusive. In 1914, the year the notes were given, the crop belonged to his family, and he was the head of it, but in 1915 I ran the place, and the crops belonged to me, and I have continued to run it ever since, and the crops levied on were made during 1917 on my place. I did not know Mr. Clark was giving papers. He would go to get things for me and come back with them, and I would pay for them, but he never did work in the crop, and the land belonged to me. Mr. Clark would help me all that he could. My money paid for the fertilizer in 1917, and the place was turned over to him in 1914, but was not turned over to him in 1917. In 1914 he hired hands, and in 1917 my brother and son hired the hands. The principal part of my business was done by me personally with the Bank of Williston, and the account ran in my name. My husband ran the place in 1913 and 1914, but the following year I ran it myself, and when he would bring me things I did not know he was signing any papers. I never rented the place at any time. My husband just took my

place for 1913 and 1914, with my consent to farm it.   He was unable to succeed.   That is the only time he ran it."

Cross-examination: "In 1914 my husband was running the place.   I turned the crop over to him to look after it in 1914.   I knew he was buying fertilizer and giving papers, and I made no objection in 1914, but did not know him to be signing papers after 1914."

It will prevent confusion to keep in mind that the validity of the judgment recovered in 1915 by the Southern States Fertilizer & Phosphate Company against the plaintiff is not in dispute, but that the sole issue is whether the crops made in 1917 were the property of the plaintiff or her husband.

"Where the wife is the owner of land, and entitled to its use, the crops grown thereon are presumptively hers, and the rights of the husband to crop the land must be founded on a transfer to him of such right, in some form which the law recognizes as having that effect.   Accordingly, the mere fact that a husband gratuitously devotes his labor and time to producing a crop on his wife's land has no legal efficacy to vest the title of such crop in him."   R. C. L., vol. VIII, p. 370, sec. 15.

"Where a husband, with or without compensation, renders services in the management of his wife's separate estate or business, it is generally considered that his creditors have no rights in the increase, profits, or income of the estate, which can be subjected to the payment of their claims.   The reason for this view is that the husband cannot be compelled to labor for his creditors; and, generally speaking, as a man is entitled to a support out of his own labor, and is under obligations to support his wife and family, the Courts from the necessity of the case have felt themselves constrained to say that, from the mere fact that a husband devotes his time and labor to his wife's separate estate, the resulting profits do not go to him or his creditors."   R. C. L., vol. XIII, p. 1160, sec. 186; also section 188.

The following language of Mr. Justice Fraser, who delivered the opinion of the Court in the case of *Southern States Fertilizer & Phosphate Co. v. Weekley,* 107 S. C. 510, 93 S. E. 190, is applicable to this case:

"Mrs. Weekley has dealt liberally with her husband. Many wives do, but they do not lose their property on that account, unless they have misled their husband's creditors. The plaintiffs do not show that they have been misled. Mrs. Weekley put the world on notice that the land was hers by the record of her deeds. These plaintiffs dealt with the husband with at least constructive notice that the land belonged to his wife. They demanded no security before the sale, and it would be unjust to allow them to get it now from the wife. The plaintffs are judgment creditors of the husband, and they do not yet claim that they extended credit to the wife. They do not show that Mrs. Weekley misled them in any way, or that Mrs. Weekley knew of the purchases."

It was not only the moral, but likewise the legal, duty of M. Clark to support his wife and children. The testimony of the plaintiff is to the effect that she made no agreement with her husband by which the crops for the year 1917 were to become his property; nevertheless, under the charge of his Honor, the presiding Judge, the jury was bound to find a verdict in favor of the defendant, if they reached the conclusion that the plaintiff allowed her husband "to use her land for the purpose of making crops for the support of the family." In this there was error.

Reversed.

MESSRS. JUSTICES HYDRICK, WATTS and FRASER concur

MR. JUSTICE GAGE did not take part on account of sickness.